JOSEPH POULIN vs. RITA POULIN.

NOVEMBER 8, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J. This is a petition for an absolute divorce filed by a husband on the ground that the parties had lived separate and apart for at least ten years. Jurisdiction was based on the respondent wife's residence in this state. She

filed a motion in the nature of a cross petition seeking a divorce only from bed and board on the statutory grounds of wilful desertion and of neglect to provide.

After a hearing in the family court the trial justice found that the parties had lived separate and apart for more than ten years, but nevertheless denied the husband's petition and granted the wife's cross petition on the ground of wilful desertion as set forth in the statute. The cause is before us on the husband's bill of exceptions, the sole exception being to the decision.

Although petitioner urges that the decision of the trial justice granting the wife's cross petition be reversed, he does so only on the ground that it is inconsistent with the granting of an absolute divorce to him which, he argues, should have been granted. He acknowledged that if the trial justice's decision in denying his petition were not erroneous, he is in no position to contest the decision as it relates to the wife.

It is undisputed that the parties were married May 24, 1941 and shortly thereafter petitioner was inducted into military service. During that period, his discharge occurring in 1945, he met several other women, among them the woman for whom he left his wife.

Shortly after the birth of his daughter in 1945 he informed his wife that the woman in question was also carrying his child. It was at this time that he left his wife and child to live with the other woman, residing with her for about one year in the state of Maine. Accompanied by her and their two-year-old son, he then moved to the town of Johnston in this state where they resided until some time in 1949. They then moved to New Hampshire where they have lived together continuously with three children born of their cohabitation.

It further appears that during the period of their Rhode Island residence, respondent visited him in Johnston, accompanied by her brother, and asked her husband to assist

in the support of their child. He advised her that he was financially unable to help. The respondent testified that she did not again seek financial assistance from her husband, because she felt that he could not have contributed any support even if he had wished to do so.

The record further discloses that petitioner received compensation from the United States government for service-connected disability. At the time of the hearing he was confined to a wheel chair and had been for some two years. Some time previously he had been receiving compensation for 30 per cent disability on the basis of which his wife received $15 from the government each month. She testified that this compensation did not last long, however, because her husband neglected to comply with government regulations.

In 1961, petitioner became eligible for total disability payments in the amount of $334 monthly and his wife, by reason thereof, became entitled to and received $86 a month.

The respondent testified that she had been forced to take employment but otherwise remained at home to care for her daughter; that she had always been a good mother, remaining faithful to her marriage vows; and that she had hoped and continued to hope that a reconciliation would eventually come about.

She testified that on several occasions petitioner had spoken to her of a reconciliation, the last such time being in 1959 when he returned to Rhode Island on the death of his father. He remained for several weeks, visited and dined with respondent at her parents' home and, she insisted, told her at that time of his intention to settle affairs in New Hampshire and return to her.

The petitioner conceded that his wife had been a good mother to his daughter and always conducted herself in a proper manner. If not evasive he was at least vague about his alleged promises to return to respondent and stated that there was no chance of a reconciliation.

The trial justice, referring to *Nardolillo* v. *Nardolillo,* 84 R. I. 250, reviewed the evidence before him, concluded that a reconciliation might still be possible and denied the petition for absolute divorce. In so doing he stated that the web of circumstances in which petitioner was involved was of his own making and this, together with his finding that a reconciliation was still possible, motivated the exercise of his discretion adversely to petitioner.

The petitioner contends, as we understand it, that the finding by the trial justice that a reconciliation was possible is unsupported by the evidence and thus clearly wrong. On this premise he argues that the trial justice denied the petition solely on the ground of petitioner's misconduct. The decision thus reached, he contends, constitutes an abuse of the judicial discretion vested in the trial justice by the statute.

It is well settled that the discretion vested in the court is judicial and that an abuse thereof is open to review by this court. *Dever* v. *Dever,* 50 R. I. 179. It is also apparent from that case that only a clear abuse of such discretion is subject to correction by this court. See *Nardolillo* v. *Nardolillo, supra.* Nor will the findings of the trial justice in such proceedings be disturbed unless clearly wrong. *McKenna* v. *McKenna,* 53 R. I. 373.

Inherent in sound public policy is the interest of the state in preserving the integrity of the family whenever or wherever possible. Manifestly then, in proceedings such as these, the question of whether any hope of reconciliation remains is for the determination of the trial justice on the basis of the evidence before him and the reasonable inferences to be drawn therefrom. If it were otherwise, the possibility of reconciliation would be eliminated as an issue on the simple assertion by a petitioner that a reconciliation could never be effected.

Here, the trial justice had before him the testimony of respondent that she had hoped and continued to hope that

she and petitioner would become reconciled on the basis of promises made by her spouse. As previously noted, petitioner did not contradict respondent in this regard, but relied on an uncertainty of recollection. Somewhat significantly, the last such assurances, according to respondent, were made within two years of petitioner's filing for an absolute divorce and in the home of her parents where petitioner had been invited to dine. This circumstance suggests an atmosphere reasonably conducive to petitioner's return.

The trial justice had the opportunity to observe the parties as they gave their testimony and in his judgment the possibility that the parties might become reconciled outweighed any to the contrary. This opportunity includes more than the obvious advantage when passing on credibility; it gives to the trial justice an opportunity to form impressions which escape this court from a mere reading of the reported testimony. We cannot say that he was clearly wrong.

Nor, in our judgment, did he abuse his discretion by denying the petition for an absolute divorce. Having found that the likelihood of a reconciliation should not be discounted, he then proceeded to speak of petitioner's misconduct as but one element in aiding him to reach his decision. That he was guided by the decision of this court in *Nardolillo* v. *Nardolillo, supra*, is readily apparent. There, reviewing circumstances not dissimilar to those in the case at bar, this court stated at page 254, "The trial justice had a right to take into consideration the husband's bad conduct as an element in exercising his discretion under the statute and he did not abuse such discretion when he denied the petition."

The petitioner's exception is overruled, and the case is remitted to the family court for further proceedings.